iUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LASHAUNDA I., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21 CV 1107 JMB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. <u>Procedural History</u>**

On April 5, 2019, plaintiff Lashaunda I. filed applications for both disability insurance benefits and supplemental security income, Title II, 42 U.S.C. §§ 401 *et seq*.; Title XVI, 42 U.S.C. §§ 1381, *et* seq (Tr. 241-254). In her applications, she alleged that she became disabled on May 1, 2017 following a car accident (Tr. 241, 245, 334). After Plaintiff's applications were denied on initial consideration (Tr. 142-147), she requested a hearing from an Administrative Law Judge (ALJ) (Tr. 148-149).

Plaintiff and counsel appeared for a hearing on May 19, 2020 (Tr. 39-80). Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. The ALJ also received testimony from vocational expert Theresa Wolford. The ALJ issued a decision denying plaintiff's applications on September 8, 2020. (Tr. 11-27). The Appeals Council denied plaintiff's

request for review on July 21, 2021.  (Tr. 1-4).  Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II.  Evidence Before the ALJ

### A.  Disability and Function Reports and Hearing Testimony

Plaintiff was born in November 1972 and was 44 years old on the alleged onset date (Tr. 288).  She lives with her husband in a house and has four children (Tr. 47, 242, 246).  She has a 12th grade education and states, in her Disability Report-Adult, that she has no specialized job or vocational training (Tr. 293).  She has had a variety of jobs; at the time of her application, she was working as a teacher's assistant in a 3rd grade classroom (Tr. 293, 301).

Plaintiff lists her disabling impairments as chronic back pain, chronic muscle spasms, lymphoma, and lymphadenopathy (Tr. 292).  In April 2019, Plaintiff's medications included Diazepam for muscle spasms and Gabapentin, Hydrocodone, and Ketorolac for pain (Tr. 294).

Plaintiff's April 2019 Function Report was filed along with a narrative statement of her physical condition (Tr. 322-35).   She states that she cannot sit or stand for a long period of time without pain, that she misses work when she has pain and muscle spasms, and that she switches duties with colleagues in order to perform work with less walking and moving; indeed, she states that she is constantly in pain (Tr. 322, 334-335).  However, she gets her kids ready for school, cooks simple/microwaveable meals, cleans, shops, and does laundry when her husband is not home (he is a truck driver) but only "a little bit at a time" (Tr. 323, 325).  When her husband is home, he manages the children, does the housework/yardwork, and drives her around (Tr. 323).  She cannot play with her kids outside, run, use stairs, walk for distances, ride amusement park rides, jump, or do household chores without help (Tr. 323-324).  Her muscle spasms and pain keep her from sleeping and going outside (Tr. 323, 325).  She needs assistance dressing and doing her hair and

uses a cane and back brace (Tr. 323, 326). She watches TV and plays games on her phone; she visits an uncle, goes out to eat, goes to the movies once a month; she also attends church when feeling well (Tr. 326).

As to her functional limitations, she cannot sit or stand for more than 15-20 minutes, she needs to constantly take breaks from walking, and she can't go up and down more than 5 stairs without resting (Tr. 326).

Plaintiff testified at the May 2020 hearing that she is 5'3" tall and weighs around 260 pounds (Tr. 48). She finished high school and had some college and vocational training in medical billing and coding (Tr. 49). She lives with three of her children and husband, her oldest child lives with his girlfriend sometimes (Tr. 47). She was not working as of the date of the hearing, her last job as a teacher's assistant ended in May 2019 (Tr. 48, 50).

She testified that she is unable to work because of constant pain and muscle spasms due to a car accident in which she sustained a fractured vertebra, two fractured discs, and nerve damage (Tr. 60, 63, 66). She has problems getting out of bed at least three days a week (Tr. 61). She cannot sit for too long because of pain and stiffness in her legs (Tr. 62). She cannot walk very far and has to sit down even when walking around her house (Tr. 63). She can lift a gallon of milk but can't lift or carry anything heavier, even grocery bags (Tr. 63-64). She has trouble using her left hand, it swells making it difficult to open and close and to grab things – she takes Meloxicam for the swelling and Diazepam to relax the muscles (Tr. 66). She has pain in her pelvic and abdominal area (Tr. 67). She cannot bend over without help or without pain and she cannot reach over her head without pain (she uses a grab stick) (Tr. 64). She uses a cane to balance (Tr. 65).

Her pain medication makes her drowsy so she could not take it while at work (Tr. 62). She also suffers from an autoimmune disease and mixed connective tissue disease (which was diagnosed in March 2020) for which she takes Hydroxychloroquine (Tr. 68).

Vocational expert Theresa Wolford testified that plaintiff's past work as a teacher's aide and pharmacy technician are considered light exertional work and her past work as a medical record coder, billing clerk, and claims clerk are sedentary (Tr. 75). Ms. Wolford was asked to testify about the employment opportunities for a hypothetical person of plaintiff's age, education, and work experience who was able to perform sedentary work, but could frequently operate hand controls, handle and finger; could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; could balance, stoop, kneel, crouch, and crawl occasionally; could never work in unprotected heights and around moving machinery party; could work in vibration occasionally; should sit with a stand option of ten minutes per hour while remaining on task (Tr. 75-76). According to Ms. Wolford, such a person could perform Plaintiff's past work as a medical coder, billing clerk, and claims clerk (Tr. 76). She further testified that there were other jobs in the economy that such a person could perform including charge account clerk, final assembler, and document preparer (Tr. 76). Finally, based on Ms. Wolford's experience, an employer could tolerate one or two absences in a month but not more and an employer would not tolerate unscheduled breaks (Tr. 76-77).

    B.    **Medical and Opinion Evidence**

Plaintiff's argument focuses on her disabling pain due to the May, 2017 car accident. However, the ALJ also discussed medical care prior May, 2017, and Plaintiff submitted evidence after the ALJ's opinion which was considered by the Appeals Council. The medical records generally relate to Plaintiff's complaints of pain, in her back and knee, muscle spasms, and care

related to the eventual diagnosis of lymphadenopathy.  The Court's recitation will begin with the car accident; prior medical care will be discussed as necessary.

On May 12, 2017, Plaintiff was seen at the Christian Hospital Northeast after her car had been rear-ended (Tr. 558).   She was alert and oriented and moved "all extremities well" (Tr. 558). However, she had pain in her neck, that was a 10 out of 10 on a pain scale, and that radiated to her lower back, a headache from banging her head, nausea, and chest and abdominal pain (Tr. 561-562).  A CT of her cervical spine showed "no evidence of acute fracture or subluxation," did show narrowing of disc spaces, but gave an overall  impression of a "normal vertebral body height [with] straightening of the cervical spine likely due to muscle spasm or positiorial" (Tr. 566).   An x-ray of the lumbar spine showed no acute facture or subluxation and normal results (Tr. 569).  She was discharged in stable condition and directed to follow up with her doctor (Tr. 572).   She had chiropractic care for her neck/whiplash from May 18, 2017 to July 3, 2017 (Tr. 615-655).  From subsequent medical records, it appears that her neck/cervical pain resolved.

She began treatment with the Orthopedic and Spine Surgeons at BJC Medical Group and Dr. Ravindra Shitut on September 7, 2017 for lumbar pain (Tr. 693).  Dr. Shitut noted that she was asymptomatic as to her neck pain but that she had low back pain, with numbness, burning and spasms that radiated to her lower extremities, that began after the car accident (Tr. 693).  Plaintiff started using a cane two months prior to the appointment and was observed limping and walking with difficulty (Tr. 694).  Dr. Shitut noted that there were no structural abnormalities that would explain Plaintiff's pain and she ordered an MRI with a plan for long term treatment that involved weight reduction, exercises, and nonsteroidal anti-inflammatories (Tr. 695).  She was then seen by physician assistant Jill Speca on October 17, 2017 (Tr. 686).  At that appointment, Plaintiff walked without an assistive device and denied difficulty walking but noted that the pain in her low back

gets worse after climbing stairs or walking long distances (Tr. 686). She rated her pain a 5 on a 10 point scale, stated that physical therapy helps, and noted that she takes ibuprofen and Tylenol for the pain (Tr. 686). The MRI revealed "grade 1 spondylolisthesis at L5-S1 with facet arthropathy with some mild stenosis at L4-L5 and L5-S1. Hemangioma noted at L4. No other abnormalities were seen" (Tr. 686). Her conservative treatment was continued (Tr. 687). At a subsequent follow up appointment on November 28, 2017, Dr. Shitut noted that no active treatment was necessary because she was doing better (Tr. 685).

Plaintiff went to an urgent care location for back pain on December 16 and 17, 2018, where she appeared uncomfortable, with muscle spasms and low back pain (Doc. 710-716). She was diagnosed with back strain and a "wedge compression fracture of unspecified lumbar vertebra, subsequent encounter for closed fracture" (Tr. 712, 715-6). She was given pain medication and directed to follow up with a specialist (Tr. 710-711, 716). She followed up with Dr. Shitut on December 18, 2018 (Tr. 676). After reviewing a CT scan, Dr. Shitut found that she had facet arthropathy in L5-S1 level (Tr. 676). However, the doctor did not believe surgery was necessary and instead indicated that Plaintiff should lose weight, do back exercises, start physical therapy, see another doctor for pain management, and take a nonsteroidal anti-inflammatory of her choice (Tr. 676). Nonetheless, Plaintiff went to urgent care on December 21, 2018 with back pain and was discharged with muscle spasms, instructions to drink water and rest and follow up with a specialist (among other conservative treatments) (Tr. 719). Prior to this, on June 26, 2018, she saw Dr. Mark Belew for knee pain (Tr. 677). She was found to have arthritis of the knee and given a cortisone injection (Tr. 678). She was instructed to lose weight as it would relieve the pressure on her knee and back (Tr. 678).

Beginning in 2019, Plaintiff began treatment for pelvic pain (chronic pain with spasms) and underwent various examinations to rule out cancer at Mercy Hospital; cancer was subsequently ruled out (Tr. 735 - 758). She was treated by Dr. Christina Min on May 17, 2019, November 18, 2019 (where one assessment was mixed connective tissue disease), and May 1, 2020 (Tr. 1261, 1314, 1322). During visits for this condition with Dr. Min, her musculoskeletal examinations were normal (Tr. 1270-1271, 1296). On follow up visits with rheumatologist Dr. Joseph Stauber on July 12, 2019, November 9, 2019 and March 6, 2020, it was noted that she had lymphadenopathy and that she had on-going inguinal pain (Tr. 1224). She also was positive for lumbosacral spine tenderness with paraspinal spasm (Tr. 1227, 1232, 1242). She was directed to continue follow up appointments with Dr. Min for the lymphadenopathy and her pain management specialist, Dr. Abraham[1] (Tr. 1228, 1232).

Plaintiff initiated primary care treatment with Dr. Frederick Balch on January 3, 2019 to address her morbid obesity, hypertension, asthma, and chronic low back pain (Tr. 1344). According to the notes, Dr. Balch spoke at length with Plaintiff about her low back pain and he "discussed the utmost importance of weight loss in hopes of improving and possibly resolving her pain" in addition to starting a pain management scheme (Tr. 1355). She followed up on February 8, 2019, May 24, 2019, July 29, 2019, October 15, 2019, January 31, 2020 and Dr. Balch noted the continued low back pain that was a significant issue for her, "horrible," unresolved by pain management treatments, and interfering with her activities of daily living (Tr. 1373, 1394, 1416, 1420, 1454, 1464). Dr. Balch instructed Plaintiff to continue treatment with Dr. Abraham. During these encounters, as with Dr. Min, her physical examination was largely normal (Tr. 1354-1355, 1375-1376, 1398, 1445). At the January 31, 2020, follow up, she reported that her back pain made

---

[1] The record does not contain treatment notes from Dr. Abraham and neither the ALJ in her opinion, nor Plaintiff and Defendant in their filings, mention this doctor.

it difficult to do activities of daily living (Tr. 1464). Dr. Balch wrote a letter "to whom it may concern" that she suffers from severe pain and disability, that she has trouble with normal activities, that it is "exceptionally difficult" for her to work, that she only gets marginal relief form pain management, and that it is unlikely that she will ever be able to get back to work" (Tr. 1159).

On January 13, 2020, she appeared at an emergency room with left leg pain and swelling due to a fall two days prior (Tr. 1173-1174). She was diagnosed with a muscle strain and directed to follow up with her primary care physician (Tr. 1179).

### III. Standard of Review and Legal Framework

To be eligible for disability benefits, plaintiff must prove that she is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets

or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the

Page **9** of **16**

Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

### IV.  The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. (Tr. 11-27). The ALJ found that plaintiff met the insured status requirements through June 30, 2019, and had not engaged in substantial gainful activity since May 1, 2017, the alleged onset date. (Tr.

14).  At step two, the ALJ found that plaintiff had the severe impairments of lymphadenopathy, degenerative disc disease, osteoarthritis in her knee, morbid obesity, and mixed connective tissue disease (Tr. 14).  The ALJ determined at step three that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  The ALJ specifically addressed listing 1.02 (major joint dysfunction), 104 (disorder of the spine), and 14.06 (undifferentiated and mixed connective tissue disease).  Plaintiff does not challenge the ALJ's assessment of her severe impairments or her determination that plaintiff's impairments do not meet or equal a listing.

   The ALJ next determined that plaintiff had the RFC to perform sedentary work, except that she needs a sit/stand option by which she can stand for ten minutes twice per hour while remaining on task at the work station.  She can frequently use her hands for fine and gross manipulation (i.e. handling, fingering).  She can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid concentrated exposure to vibrations and all exposure to work at unprotected heights and around moving mechanical parts (Tr. 15-16).  In assessing plaintiff's RFC, the ALJ extensively summarized the medical record; written reports from plaintiff; plaintiff's work history; and plaintiff's testimony regarding her abilities, conditions, and activities of daily living. (Tr. 16-26).  Plaintiff asserts that the ALJ improperly assessed her subjective complaints and that the RFC is not supported by substantial evidence.

   At step four, the ALJ concluded that plaintiff was able to return to her past relevant work as a medical record coder. (Tr. 24).  Her age on the alleged onset date placed her in the "younger individual" category.  She has at least a high school education (Tr. 25).  The transferability of job skills was not an issue because using the Medical-Vocational Rules as a framework supported a

finding that plaintiff was not disabled whether or not she had transferable job skills.  The ALJ found at step five that someone with plaintiff's age, education, work experience, and residual functional capacity could perform other work that existed in substantial numbers in the national economy, namely as a charge account clerk, final assembler, and document preparer.  (Tr. 26).  Thus, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act from May 1, 2017 to September 8, 2020 — the date of the decision.  (Tr. 26-27).

After the ALJ issued her opinion, Plaintiff submitted additional medical information including an April 16, 2021 MRI which showed: "compression deformity at the L2 superior endplate causing loss of stature approximately 30-40%.  This is new since prior radiographs of 2016 but does not appear to be acute as there is no marrow edema" along with mild disc bulging, mild stenosis, moderate facet hypertrophy, and severe facet hypertrophy at various levels of her lumbar spine (Tr. 84-85).  The impression was "Lumbar spondylosis and stenosis" and "Chronic L2 compression deformity" (Tr. 85).  In addition, Dr. Balch provided a "Physical Medical Source Statement Re: Ability to Do Work-Related Activities (Physical)" (Tr. 88-91).  In the form, Dr. Balch identified Plaintiff's condition as chronic low back pain secondary to a car accident and provided various functional limitations, including that: she can sit/stand/walk for 1 hour or less in a work day; never lift more than 5 pounds or more; never carry 5 pounds or more; can handle things with her left and right hands; can balance; can never reach above her head or stoop; that her pain causes diminished focus, will cause absences of more than 3 per month, and cause her to be late more than 3 times per month (Tr. 89-90).  He noted that she has muscle spasms and reduced range of motion, that she complains of pain, has weight loss/gain, sleeplessness and irritability (Tr. 90).  And, he stated that she needs a cane, that lying down improves her symptoms, that she needs

to take more than 3 breaks in a workday, and that her impairments will last for at least 12 months (Tr. 91).

The Appeals Council reviewed the MRI and Dr. Balch's assessment and found that the MRI does not "relate to the period at issue" as it did not indicate that she was disabled on or before September 8, 2020 (Tr. 2). In addition, the Appeals Council found that Dr. Balch's assessment "does not show a reasonable probability that it would change the outcome of the decision" (Tr. 2).

## V. Discussion

Plaintiff argues that the RFC is not supported by substantial evidence in the record including Dr. Balch's treatment notes, letter, and subsequent report of functional limitation.

When the Appeals Council denies benefits after reviewing new evidence, the Court is not required to address the Appeals Council's decision but rather to determine whether the record as a whole supports the Commissioner's decision. McDade v. Astrue, 720 F.3d 994, 1000 (8th Cir. 2013); Swarthout v. Kijakazi, 35 F.4th 608 (8th Cir. 2022).

In evaluating opinion evidence, an ALJ no longer is required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[2] Rather, in evaluating medical sources, the ALJ considers specific factors including supportability, consistency, relationship with the claimant, specialization, and other factors. Id. at (b)(2), (c)(1-5). The first two, supportability and consistency, are the most important factors. Id.; see Bowers v. Kijakazi, ___ F.4th ___, 2022 WL 2840534 (8th Cir. 2022).

---

[2] For claims filed prior to March 27, 2017, regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. § 404.1527(c)(2)

Page **13** of **16**

In addressing Dr. Balch's initial opinion, that Plaintiff was restricted from doing any work mostly because of her back pain, the ALJ stated that his January 31, 2020 letter was vague, not entitled to any special significance, and unsupported by treatment records (Tr. 23). To address these concerns, Plaintiff submitted the February 1, 2021 medical source statement, setting forth the precise functional limitations Dr. Balch found along with the general reasons why.[3] However, even if the ALJ was to have considered Dr. Balch's letter and statement as relevant to a finding of disability, there is substantial evidence in the record to reach the result that Plaintiff's functional limitations are not as severe as Dr. Balch opines or that Plaintiff believes.

As set forth in the ALJ's opinion: (1) CT scans of her spine immediately following the accident did not show fractures or abnormalities except straightening perhaps due to spasms (Tr. 18); (2) Dr. Shitut found that her cervical spine was asymptomatic, that her examinations were mostly normal, that her condition did not necessitate surgical intervention in November 2017 and December 2018 or (in November 2017) any active treatment (Tr. 20); (3) Dr. Balch's examinations were mostly normal, even though he noted her persistent back pain and some functional limitations, and that he referred her to specialists to address her pelvic pain (Tr. 21-22); (4) Dr. Min's examinations were negative to joint pains and gait problems and largely normal (Tr. 21); (5) there is a note of improving back pain in March, 2019 (Tr. 21); and, (6) Consultive Dr. Butler found that she could sit comfortably, could dress and undress without assistance, was not in distress but did have a little trouble standing from a sitting position and getting on and off the examination table (Tr. 21, 1153-1155). The ALJ further noted that medical records after Dr. Balch's January, 2020 letter revealed that, while she had tenderness in her lumbar spine, the examination was mostly normal (Tr. 23). In sum, the ALJ found that while Plaintiff does indeed have pain for which she

---

[3] The Court offers no opinion on the value of Dr. Balch's statement because it is in the "check-box" format that the Eighth Circuit has found unpersuasive. See Swarthout, 35 F.4th at 611.

seeks treatment and diagnostic testing reveal degenerative changes, physician findings reveal no significant deficits in strength, range of motion, posture, and gait (among other things) (Tr. 24). And, multiple doctors advised Plaintiff that losing weight and exercise would significantly reduce (if not alleviate) her pain. Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009) (noting that a recommendation of exercise can be inconsistent with a disability claim). Indeed, no doctor found that she required surgery or other dramatic intervention to resolve her on-going pain; rather she was directed to make lifestyle changes and continue with medication. See Lawrence v. Saul, 970 F.3d 989, 996-997 (8th Cir. 2020).

Plaintiff naturally points to aspects of the record that highlight Plaintiff's consistent complaints of back pain, tenderness of the lumbar spine, muscle spasms, use of a cane and some gait problems, additional medical reports of decreased range of motion at the end of 2018, pain management treatments, and Dr. Balch's opinions. She also argues that the ALJ failed to consider how her back spasms and lymphadenopathy could support her allegations of disabling pain. Finally, she appears to argue that the April 2021 MRI is conclusive proof of a disabling back condition. While there may be substantial evidence in the record to support a finding of disability, it does not mean that reversal is warranted. See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009). There is no question that Plaintiff suffers from back and pelvic pain related to her back condition, lymphadenectomy, and obesity. She has consistently sought treatment and complained of such pain to her medical providers and she is receiving treatment in the form of pain medication and instructions to limit her caloric intake and exercise. There is also clinical evidence of the causes of her pain, most notably her degenerative back conditions.

However, even when the record may reasonably lead to opposite conclusions, this Court must affirm the ALJ's opinion. Perks v. Astrue, 687 F.3d 1086, 1091 (8th Cir. 2012). The ALJ

did consider Plaintiff's medical conditions and how they relate to her pain and functional limitations even though she found that her complaints were not supported by the bulk of objective medical findings.  Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2010) (holding that the ALJ properly found that the plaintiff's subjective complaints were not supported by the objective medical record).[4]  She accounted for Plaintiff's postural limitations, her sit/stand necessity, and her inability to perform light work by restricting her to sedentary occupations.  She further found that Plaintiff could return to her previous sedentary occupation and that other jobs existed in the national economy that Plaintiff could perform not withstanding her limitations.

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of August, 2022

---

[4] The ALJ does not explicitly state that she found Plaintiff's statements of functional limitations inconsistent with the medical record nor does she point out inconsistencies between plaintiff's written reports and her testimony (for example, in her functional report, Plaintiff stated that she did not have specialized training (Doc. 293), but at the hearing she noted that she did (Tr. 49)).  However, the conclusion to be drawn from the ALJ's recitation of the medical record and findings demonstrate that the ALJ did not believe Plaintiff's functional limitations to be as severe as her testimony would suggest or as Dr. Balch opined.  Walker v. Kijakazi, 2022 WL 3042110, 5 (8th Cir. 2022) ("The ALJ may discount complaints if they are inconsistent with the evidence as a whole.").